## MOORE v. MEYER–SNIFFEN CO.

(Circuit Court of Appeals, Second Circuit. April 4, 1905.)

### No. 66.

PATENTS—INFRINGEMENT—OVERFLOW FOR WASH BASINS.

The Moore patent No. 379,973 for an overflow device for wash basins, bath tubs, etc., is of doubtful validity in view of the prior art, and, if conceded to show patentable invention, is entitled to only a very narrow construction, which limits it to the precise structure shown. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 126 Fed. 191.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, dismissing a bill. The suit is for alleged infringement of letters patent 379,973, issued March 27, 1888, to complainant, for bath tub, sink, or wash basin.

W. P. Preble, Jr., for appellant.
M. B. Phillipp, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. Inasmuch as the defendant's devices are wash basins only, it will be sufficient to consider such parts of the patent as deal particularly with wash basins. The object of the invention is stated to be to provide an improved overflow. The specification sets forth:

"In the ordinary concave-shaped earthenware wash hand basins, where the overflow pipe proceeds from the side, strainer holes have heretofore been made through the body of the earthenware into the overflow pipe. * * * The result is that the foul matter that accumulates in the overflow pipe cannot be removed, and continually emits a disagreeable odor through the overflow holes into the room, which is often mistaken for sewer gas, and is quite as injurious to health. Another objection to * * * strainer as at present constructed is that there is no means of ascertaining if the overflow pipe is operative, and of cleaning it if it becomes clogged, without disconnecting the overflow pipe. * * * Now in my invention these objections are removed,

as the strainer can be taken off from time to time, and the overflow pipe kept clean and free. A represents a basin, * * * and B shows an unbroken inlet into the overflow pipe, and it is made large enough to insert a swab through it into the said overflow pipe, so that the latter can be cleaned when it becomes foul."

This statement of invention is perspicuous, and, if the patentee's summary of the prior art were accurate, there would be ground for holding that his improvement was of a patentable character, in which case the claims sued upon could no doubt be sustained, although by their phraseology they are confined to specific mechanical details—a combination of old devices for attaching the overflow strainer to the basin and allowing it to be shifted on and off the overflow outlet. But his statement—or, perhaps, it is more correct to say the implication from his statement—that all prior wash basins had only the small strainer holes, so that it was not possible to pass a swab through and clean the overflow pipe, is inaccurate. The patent to Tuttle (257,906; May 16, 1882) proposes to "substitute for the perforations commonly made through the side of the basin a horizontally broad * * * opening, located near the top of the basin, and arranged to obtain the necessary capacity of opening." A recess for the soap tray is arranged "over the overflow passage, if preferred." The bottom of the soap tray is perforated, so that the drip may fall directly into the overflow pipe, and the tray is removable, not being fastened in any way, for facility in cleaning. When the soap tray is removed, the overflow passage is as free as in complainant's basin, and it may be as readily cleaned with a swab, or otherwise. In Tuttle the overflow runs through the large opening without being strained, but the art with which the patent in suit is concerned shows outlet apertures provided with strainers which may be slipped aside when desired. The claims relied on are:

"(4) The combination, with a basin, bath tub, or sink, of a bolt or bushing, 3, made separate from and secured permanently to the body of the basin, and having the end inside of the basin prepared to receive a fitting to hold the strainer, 5, in position over the mouth of the overflow; the fitting which holds the strainer, 5, being arranged to admit of the said strainer, 5, being removed from the mouth of the overflow without loosening or removing the fitting, 3, from the body of the basin.

"(5) In an earthenware wash basin having an overflow-pipe, and an aperture, 6, made in the earthenware, the combination, with the fitting, 2, and bolt or bushing, 3, secured permanently to the basin of the fitting, 4, screwed to the bolt or bushing, 3, and the strainer, 5, held in position by the fitting, 4; the said fitting, 4, and strainer, 5, being arranged to be removed from the basin without removing the fitting, 2, or bolt or bushing, 3."

As was said before, it is doubtful whether, in view of the state of the art, there is sufficient invention in this combination to sustain a patent; but certainly, if those claims can be sustained, they must be restricted to the precise combination of elements set forth. Complainant contends that an equivalent of the fitting, 4, is found in a horizontal screw, to which in defendant's device the strainer is attached. The specification sets forth that the—

"Strainer is made flexible, so as to conform itself more readily to the shape of the surface of the basin. I purpose making them of thin metal, and of a

thin material of a fibrous composition, such as zylonite or celluloid. * * *
This strainer has a hole made in the margin of it for the bolt, * * * 4,
and when the strainer is placed in position over the inlet, B, the bolt, 4, is
inserted through the hole in the strainer, and is screwed into the nut, 3, until
the flange on it presses against the surface of the strainer sufficient to keep
said strainer rigid over the overflow inlet."

When the strainer is to be moved off the outlet, so as to allow
the overflow pipe to be cleaned, the bolt or fitting, 4, is partially un-
screwed, so as to relax pressure, and thus leave the strainer loose,
instead of rigid. The horizontal screw of defendant's device is
merely a pin which passes through holes made in the ears of the
strainer and of the pintle, which is fixed to the basin thus with the
ears making a hinge on which the strainer can be rocked up and
down by the hand. It presses against nothing, and is not screwed
in or out to secure rigidity or looseness of the strainer. In so nar-
row a patent as this, the variation is sufficient to avoid infringement.
The decree of the Circuit Court is affirmed, with costs.